*10*

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 03-0563 - A

### TULLIO E. PONZI,

#### Plaintiff,

#### vs.

### LONGVIEW CORPORATION and SUSAN LONDON, ELEANOR HACKETT, and MAURICE FOX as DIRECTORS,

#### Defendants,

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### NATURE OF PROCEEDINGS

Plaintiff, Tullio E. Ponzi (Ponzi), filed this action seeking, *inter alia*, a declaration that he is the valid owner of 69 shares in a real estate cooperative operated by defendant Longview Corporation. The defendants Susan London, Eleanor Hackett, and Maurice Fox are directors of Longview. Hereinafter, all of the defendants will be collectively referred to as "Longview." All of the counts of Ponzi's complaint stem from his putative ownership of those 69 shares (the shares). The shares at issue evidence a right to Unit 502 of the Longview Housing Cooperative located at 983-986 Memorial Drive in Cambridge. Ponzi alleges that the shares were transferred to him from his mother, Anna Nuissl (Nuissl), either *inter vivos* or via probate administration after Nuissl's death.

The case is now before this Court for consideration of Longview's motion for judgment on

the pleadings or, in the alternative, for summary judgment,[1] and Ponzi's cross-motion for summary

judgment. The determinative issue is whether Ponzi has satisfied the requirements of G. L. c. 106,

§8, the by-laws and Articles of Organization of Longview Corp., and/or Massachusetts probate law

so as to validly complete a transfer of common stock.

For the reasons set forth below, Longview's motion is **ALLOWED** and Ponzi's cross-motion

is **DENIED**.

## FACTUAL BACKGROUND

The undisputed material facts and the disputed material facts viewed in the light most

favorable to Ponzi, as revealed by the summary judgment record, are as follows.

Nuissl purchased the shares at issue in or about 1985. Ponzi asserts that Nuissl transferred

these shares to him, *inter vivos,* in 1987. He alleges the transfer occurred on April 2, 1987 when

R.M. Bradley Co., the management company hired by Longview, was notified that Nuissl had

executed a "transfer document" at the United States Consulate in Switzerland.

Subsequently, in 1989, Ponzi asserts, Longview presented a new lease for unit 502. He

alleges that this lease listed Nuissl as the lessee in the body of the lease, but that he executed the

lease along with Nuissl. Ponzi further asserts that Longview thereafter recognized him as a

shareholder in the cooperative by notifying him of shareholder meetings and permitting him to vote

as a shareholder. Moreover, Ponzi asserts that he had been living as a tenant of Unit 502 since 1981

and that since either (a) his occupancy began, (b) Nuissl's purchase of the shares in 1987, or (c) the

presentation of the new lease in 1989, he had paid all costs associated with the use, occupancy, and

---

[1] Because this court has considered materials outside of the pleadings, the motion is treated as a motion for summary judgment. See Mass. R. Civ. P. 12(c).

ownership of Unit 502.

Ponzi further asserts that Nuissl died intestate in Switzerland on September 7, 1999. Ponzi claims that he became the sole heir and administrator of her estate. To support this assertion, Ponzi has presented purported Swiss probate documents and an opinion of Swiss counsel. Ponzi has taken no action in the Massachusetts courts to either certify this opinion or probate Nuissl's estate here. The record provides no evidence of Nuissl's domicile at death.

In March 2002, Ponzi requested that Longview upgrade and replace the windows in unit 502. Longview responded to this request by letter asserting that Longview would not perform the work because Ponzi was not a Longview shareholder. Ponzi claims that this prompted him to seek a declaration of ownership from this Court.

This case is now before the court for consideration of the parties' cross-motions for summary judgment. Longview argues that (1) The alleged *inter vivos* transfer from Nuissl to Ponzi is ineffective because it fails to comply with the requirements of the Investment Securities section of the Uniform Commercial Code, as enacted in G. L. c. 106, § 8, and the Longview by-laws and Articles of Organization; and (2) that, based on the facts in the record, Ponzi will be unable to prove that he is, in fact, sole heir and administrator of Nuissl's estate. Ponzi counters that (1) the 1987 *inter vivos* transfer was valid; (2) Longview has waived any opposition to his status as a shareholder; (3) even if the *inter vivos* transfer were invalid, there is sufficient evidence in the record to demonstrate that Ponzi is the sole heir and administrator of Nuissl's estate; and (4) that if the record is insufficient to so demonstrate, summary judgment should be postponed until the completion of discovery so that he may obtain sufficient evidence.

## DISCUSSION

Summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56(c); Cassesso v. Comm'r of Correction, 390 Mass. 419, 422 (1983); Cmty. Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The non-moving party may not defeat a motion for summary judgment by resting on the allegations and denials of its pleadings, but must set forth specific facts, with materials described in Mass. R. Civ. P. 56(e), to show that there is a genuine issue for trial. See Mass. R. Civ. P. 56(e).

In order to determine whether material facts remain in dispute, the relevant law to which the facts will be applied must be established. Ponzi may establish valid ownership in his shares by showing either that the alleged *inter vivos* transfer was valid or that he should properly be recognized as sole heir and administrator of Nuissl's estate. The law governing each of these issues is outlined and applied below.

### 1.     Whether the alleged *inter vivos* transfer is valid.

To be valid, the *inter vivos* transfer must comply with guidelines set forth for investment securities contained in Article VIII of the Uniform Commercial Code, as adopted in Massachusetts

4

in G. L. c. 106, § 8, as well as the Longview by-laws and Articles of Organization.

### a.  Was the transfer valid under Article VIII of the U. C. C.?

Stock certificates, such as the ones at issue, are defined as investment securities and are therefore governed by Article VIII of the Uniform Commercial Code.  See G. L. c. 106, § 8-102. Although a certificated security may be properly indorsed by any "appropriate person" including a successor at law, G. L. c. 106, § 8-107(a)(4) and (b)(1), security interests may only be acquired if the transferee receives (1) proper delivery of the stock certificate or (2) a security entitlement.  G. L. c. 106, § 8-104(a).

Pursuant to the first method, a transferee of a security does not acquire a direct interest in the security until the certificate is properly "delivered."  See G. L. c. 106, § 8-301, n.1.  Delivery of a certificated security is not made until the transferee, or a securities intermediary acting on his behalf, receives real possession of the actual stock certificate.  See G. L. c. 106, § 8-301(a)(1)-(3).  Here, there is no evidence that the certificates ever left Longview's possession.  Therefore, it is impossible for the security certificates to have been properly delivered to Ponzi.  Thus, there has not been an effective transfer of Nuissl's interest to Ponzi pursuant to G. L. c. 106, § 8-104(a)(1) and 8-301(a)(1)-(3).

Under G. L. c. 106, § 8-501 (b), a person acquires a security entitlement through the actions of a securities intermediary.  A securities intermediary can be either a clearing corporation or a "person . . . that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity."  G. L. c. 106, § 8-102(14)(i)-(ii).  Plaintiff has not alleged that the defendant is either a clearing corporation or a person maintaining security accounts in the ordinary course.  Therefore, plaintiff has not alleged that he acquired a security entitlement.

In sum, Ponzi has not received proper delivery of the stock certificates. Nor has he acquired a security entitlement. As these are the only two ways he would be able to acquire the security interests at issue pursuant to the requirements of G. L. c. 106, § 8-104(a), there has been no effective transfer of the investment security under Article VIII of the Uniform Commercial Code.

### b. Was the transfer valid under the Longview corporate by-laws and Articles of Organization?

Pursuant to Longview's by-laws, the record holder of the shares as shown in the Longview corporate books is treated as the owner of the stock for all purposes "regardless of any transfer, pledge, or other disposition of such stock, until the shares have been transferred on the books of the Corporation." By-laws of Longview Corporation, Article II, § 6. Moreover, "[s]hares will be transferred on the books of the Corporation only upon an assignment in writing by the owner thereof or his legal representative, and upon surrender and cancellation of the certificate(s) therefor, and upon compliance with the provisions restricting the transfer of shares." By-laws of Longview Corporation, Article II, § 7. Furthermore, section 8 of the by-laws requires that the owner seeking to transfer the stock must offer Longview the opportunity to purchase the shares in writing before any such transfer. See By-laws of Longview Corporation, Article II, § 8. The offer must include a proposed sale price, a written commitment to execute an acceptable lease, and a 30 day option for Longview to purchase the shares. See id. These transfer restrictions are also incorporated in Longview's Articles of Organization. See Longview Corporation Articles of Organization.

Integrating the above requirements, Longview by-laws require it to treat the shareholder of record as the owner of the stock. The shareholder of record can only be changed once Longview has received a written assignment after a valid transfer has occurred, together with a surrender of the

6

certificates of stock. Finally, no transfer is valid unless Longview is first afforded a 30 day option to purchase the shares.

While Nuissl was provided a photocopy of the stock certificates, and Ponzi claims she executed them in order to transfer the shares to him, Longview asserts that Nuissl was required to cancel and surrender the original stock certificate in order to affect a valid transfer.[2] Longview further contends that Nuissl failed to do so and that the original stock certificates remained in Longview's control at all times. There is no contrary evidence or assertion by Ponzi in the record. Nor is there any assertion by Ponzi, or evidence in the record, suggesting that Nuissl granted Longview an option to purchase the shares prior to that alleged transfer.

Ponzi asserts that a valid transfer occurred when Nuissl executed a "transfer document" in the U. S. Consulate in Sweden which purportedly transferred her interest in the shares to him. However the terms of the by-laws and Articles of Organization require a surrender and cancellation of the stock certificates. Therefore, the purported execution of a photocopy of these certificates, regardless of whether Longview was notified of such an act, is ineffective to transfer the shares.

Ponzi finally claims that Longview has waived its objections to the transfer because it did not oppose the transfer when notified of the execution of the "transfer document" or when Ponzi co-executed the lease. However, Longview's failure to object is not equivalent to a tacit acceptance of a transfer not completed in accordance with the applicable corporate by-laws. Indeed, neither of these actions would suggest to Longview that Ponzi and Nuissl did not intend to complete the

---

[2] That the original stock certificate must be executed is consistent with the Uniform Commercial Code and the likely purpose of the by-laws. Stock certificates such as those at issue are "investment securities" governed by Article VIII of the U. C. C. See G. L. c. 106, § 8-102. A purchaser must acquire actual possession of such investment securities in order to affect proper delivery. See G. L. c. 106, § 8-301. The by-laws outlining the requirements for the transfer of such investment securities would naturally contemplate transactions consistent with the requirements of applicable law.

transfer in accordance with the applicable rules. Therefore, Ponzi's allegations of waiver must fail.

   **2.    Whether Ponzi should properly be recognized as sole heir and administrator of Nuissl's estate.**

   Ponzi asserts that he is the sole heir and administrator of Nuissl's estate. To evidence his status as sole heir, Ponzi provides only a letter from a Swiss attorney attesting to this fact along with purported Swiss probate documents. Ponzi provides no documentation whatsoever to support his status as administrator of Nuissl's estate.

   The laws of descent and distribution and the legal provisions regarding certain foreign fiduciaries are contained in G. L. chapters 199 and 199A respectively. Pursuant to Chapter 199A, § 2,

> "any person . . . having possession or control of personal property, or of an instrument evidencing a . . . stock . . . belonging to the estate of the nonresident decedent duly admitted to probate in a foreign jurisdiction, may . . . deliver the personal property, or the instrument evidencing the . . . stock . . ., to the domiciliary foreign personal representative of the nonresident decedent upon being presented with proof of his status and an affidavit made by or on behalf of the representative stating: (1) the date of death of the nonresident decedent, (2) that no local administration, or application or petition therefor, is pending in the commonwealth, and (3) that the foreign personal representative is entitled to delivery." G. L. c. 199A, § 2 (emphasis added).

   A domiciliary foreign personal representative (DFPR) is "a foreign personal representative under the law of the jurisdiction of the decedent's domicile." G. L. c. 199A, § 1. To administer the decedent's Massachusetts property, a DFPR "may file with a probate court in the commonwealth in a county in which property belonging to the decedent is located, authenticated copies of his appointment and any official bond he has been given." G. L. c. 199A, § 5.

   In sum, Longview could only distribute the shares to Ponzi upon proof of his status as a DFPR for Nuissl's estate, including an affidavit stating that he, as DFPR, is entitled to recover the

property. G. L. c. 199A, § 2. Yet Ponzi has offered no proof to establish that he is the DFPR for the estate; nor has he submitted the required affidavit to Longview or this Court. Moreover, Ponzi has not even established himself as the DFPR for the estate. He has failed to file in a Massachusetts probate court "authenticated copies of his appointment and any official bond he has been given." G. L. c. 199A, § 5. Additionally, there is no evidence that he has received such an official appointment from the Swiss Court. Therefore, Longview is not required to distribute the shares to Ponzi. Indeed, it appears Longview is not authorized to do so.

Hence, no issues of fact remain to be decided by this Court. As a matter of law, Ponzi has failed to establish that a valid *inter vivos* transfer of the shares was affected pursuant to the Uniform Commercial Code or the by-laws of the Longview Corp. Likewise, Ponzi has failed to meet the necessary requirements for transfer of the shares to him via probate. Therefore, summary judgment in favor of Longview is appropriate.

## ORDER

The defendants' motion for summary judgment is **ALLOWED** and plaintiff's cross-motion for summary judgment is **DENIED**.

BY THE COURT:

R. Malcolm Graham
Justice of the Superior Court

Date: November 21, 2003                    Attest: Brian Bucela
                              N/B                       Asst. Clerk

9